IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| CARL GARRETT, | |
| Plaintiff, | CIVIL ACTION NO.: 6:17-cv-120 |
| v. | |
| JOHNATHAN MEEKS, | |
| Defendant. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Dismiss.  Doc. 13.  For the

following reasons, I **RECOMMEND** the Court **GRANT in part** Defendant's Motion to Dismiss

as to Plaintiff's claim for compensatory damages and preliminary injunctive relief and **DENY in**

**part** Defendant's Motion to Dismiss relating to Plaintiff's failure to exhaust.

**BACKGROUND**

Plaintiff, a prisoner at Coffee Correctional Facility in Nicholls, Georgia, brings this

action under 42 U.S.C. § 1983 to challenge certain conditions of his confinement while he was

housed at Rogers State Prison in Reidsville, Georgia.  Specifically, Plaintiff alleges that, on July

23, 2017, Plaintiff and Defendant had an argument about Plaintiff's right to eat breakfast.  Doc. 1

at 5.  Plaintiff alleges that, moments after the argument, Defendant approached Plaintiff from

behind and punched him in the face and head.  Id.  Plaintiff asserts an excessive-force claim

based on the alleged assault.  Id. at 6.

Defendant moves to dismiss Plaintiff's claim, arguing the claim is barred because

Plaintiff did not exhaust all available administrative remedies before filing suit, as required under

the Prison Litigation Reform Act ("PLRA").  Doc. 13.  In addition, Defendant argues the Court

should dismiss Plaintiff's requests for preliminary injunctive relief and compensatory damages
as barred by the PLRA.[1] Id.

## I.     Exhaustion of Administrative Remedies under § 1997(a)

### A.     PLRA's Exhaustion Requirement

Under the PLRA, an incarcerated individual must exhaust all available administrative

remedies—the prison's internal grievance procedures—before filing a federal lawsuit to

challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202

(2007).  Requiring prisoners to first utilize the prison's grievance policy before bringing suit

"eliminate[s] unwarranted federal-court interference with the administration of prisons" and

allows "corrections officials time and opportunity to address complaints internally before . . . the

initiation of a federal case."  Woodford v. Ngo, 548 U.S. 81, 93 (2006); Johnson v. Meadows,

418 F.3d 1152, 1156 (11th Cir. 2005) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th

Cir. 1998)).  Congress, in enacting the PLRA, made exhaustion mandatory, foreclosing any

judicial discretion to waive the requirement.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016); Jones,

549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court.").

Proper exhaustion requires compliance with the prison's administrative policies,

deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91.  Prisoners must do

more than simply initiate grievances; they must also appeal any denial of relief through all levels

of review that comprise the administrative grievance process.  Bryant v. Rich, 530 F.3d 1368,

---

[1]      Defendant suggests in his Motion that he also seeks to dismiss Plaintiff's claim for punitive damages, but that claim has already been dismissed.  In his Complaint, Plaintiff sought $100,000 in punitive damages against Defendant in his official capacity.  Doc. 1 at 6.  The Court dismissed Plaintiff's official-capacity claims, which was Plaintiff's only purported basis for seeking punitive damages.  Doc. 8 at 8–9; Doc. 11.  Plaintiff's request for $50,000 in compensatory damages "for pain and suffering and emotional damages" is still before the Court.  Doc. 1 at 6.

1378 (11th Cir. 2008) (quoting Johnson, 418 F.3d at 1157) ("To exhaust administrative remedies

in accordance with the PLRA, prisoners must 'properly take each step within the administrative

process.'"); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting that an

inmate's belief that administrative procedures are futile or needless does not excuse the

exhaustion requirement); see also Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D.

Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden

regarding his grievance is still in the process of exhausting his administrative remedies).  The

policies of the particular institution determine what is necessary to fully exhaust all

administrative remedies.  Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-

14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion

requirement, a prisoner must complete the administrative process in accordance with the

applicable grievance procedures established by the prison.").  However, "[p]roper exhaustion

generally does not require that a prisoner resort to optional administrative procedures to address

prison conditions."  Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752 (11th Cir.

2018) (citing Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).

**B.**     **The Georgia Department of Corrections' ("GDC") Administrative Remedies**

"Georgia's prison grievance procedures are set out in a standard operating procedure."

Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015);

see also Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust

administrative remedies under the Georgia Department of Corrections Standard Operating

Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP

IIB05-0001."); Turner v. Burnside, 541 F.3d 1077, 1080–81 (11th Cir. 2008).  SOP IIB05-0001

applies to all inmates in GDC facilities, including Rogers State Prison.  Timmons v. Sellers, No.

6:16-CV-19, 2016 WL 5109163, at \*4 (S.D. Ga. Sept. 20, 2016).  Under this policy, inmates

may "file a grievance about any condition, policy, procedure, or action or lack thereof" which

"affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable

issue."  Doc. 13-3 at 6.  Under SOP IIB05-0001, inmates cannot file grievances about

"[d]isciplinary actions, including any punishment, fees, or assessments."  Id.  Rather, SOP

IIB02-0001 outlines the procedure by which inmates may appeal disciplinary decisions.  Id.

Under SOP IIB05-0001, inmates must file grievances within 10 days of becoming aware

of the facts from which the grievance arises.  Whatley II, 898 F.3d at 1075; Shaw v. Toole, No.

6:14-CV-48, 2015 WL 4529817, at \*5 (S.D. Ga. July 27, 2015).  The grievance is screened by a

grievance counselor, who determines whether to accept the grievance for processing.  Shaw,

2015 WL 4529817, at \*5.  If the grievance is accepted for processing, the warden has 40 days to

review the grievance and determine whether to grant or deny it.  Id.  If a grievance goes

unanswered, the inmate may appeal the non-response after the warden's time to answer expires.

Id. ("An inmate can file an appeal with the Commissioner's Office in the following instances: if

the grievance coordinator rejects his original grievance; after the warden responds to the original

grievance; or when the time allowed for the warden's decision has expired."); see also Whatley I,

802 F.3d at 1208 ("If the warden does not respond within forty days . . . the prisoner may

appeal[.]").

### C.     Standard of Review

Defendants may raise an inmate-plaintiff's failure to exhaust as an affirmative defense.

Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the

PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at

1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to

exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner, 541 F.3d at

1082); see also Trevari, 729 F. App'x at 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir.

2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists.

Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory

exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative

remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from

the plain language of the word "available," the United States Supreme Court has concluded that

"an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use'

to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541

F.3d at 1084 ("A remedy has to be available before it must be exhausted, and to be available' a

remedy must be 'capable of use for the accomplishment of its purpose.'" (quoting Goebert v. Lee

County, 510 F.3d 1312, 1322–23 (11th Cir. 2007))). "Remedies that rational inmates cannot be

expected to use are not capable of accomplishing their purposes and so are not available."

Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy,

although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859.

First, "an administrative procedure is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting that

the PLRA "does not require inmates to craft new procedures when prison officials demonstrate

. . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required

when an administrative procedure that is "so opaque" or "unknowable" that "no ordinary

prisoner can discern or navigate it." <u>Ross</u>, 136 S. Ct. at 1859–60.  Finally, "when prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to

exhaust.  <u>Id.</u> at 1860; <u>Abram v. Leu</u>, No. 17-12319, 2019 WL 76849, at *2 (11th Cir. Jan. 2,

2019) ("An administrative remedy may be unavailable when prison officials interfere with a

prisoner's pursuit of relief."); <u>Dimanche</u>, 783 F.3d at 1214 ("The PLRA does not 'require[] an

inmate to grieve a breakdown in the grievance process.'" (quoting <u>Turner</u>, 541 F.3d at 1083));

<u>Miller v. Tanner</u>, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require

plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-

level denial was precluded").

In <u>Turner v. Burnside</u>, the Eleventh Circuit laid out a two-part test for resolving motions

to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082.

First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in

the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  <u>Id.</u>;

<u>see also</u> <u>Bracero</u>, 2018 WL 3861351, at *1.  This prong of the <u>Turner</u> test ensures there is a

genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  <u>Glenn v.</u>

<u>Smith</u>, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing <u>Turner</u>, 541 F.3d at 1082); <u>Pavao</u>, 679

F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner

show a failure to exhaust."  <u>Abram</u>, 2019 WL 76849, at *2 (quoting <u>Whatley I</u>, 802 F.3d at

1209); <u>Turner</u>, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under

Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's

allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion."). After resolving the

factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541

n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts

outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual

dispute does not decide the merits and the parties have a sufficient opportunity to develop the

record." (citing Bryant, 530 F.3d at 1376)).

### D.       Applying the Turner Test

Plaintiff, in his initial Complaint, admits he did not file a grievance with Rogers State

Prison officials, as required under SOP IIB05-0001. Doc. 1 at 3. Plaintiff further explains that

he did not file a grievance "because there was a disciplinary report written, and you cannot

grieve a disciplinary report according to SOP policy." Id. at 4. He asserts that "[t]his is what the

counselor told [him]." Id. In a later filing, Plaintiff clarifies that he requested the grievance form

while in administrative lockdown, and the counselor told him that he "couldn't file a grievance

concerning the Defendant's excessive use of force against him because the issues involved

would relate directly to the disciplinary report written." Doc. 19 at 1.

Defendant makes two main arguments. First, Defendant argues that, even if Plaintiff's

claim is accepted as true, Plaintiff is not excused from the exhaustion requirement because,

"[a]lthough Plaintiff contends a counselor told him that he cannot grieve a disciplinary report, the administrative remedies were, in fact, available to Plaintiff for an excessive force claim, which is the claim brought in this case." Doc. 13-1 at 5. Second, Defendant argues Plaintiff's allegations are "outweighed by the record as a whole, which establishes the existence of a grievance procedure, its availability for allegations of assault, and Plaintiff's prior use of the process." Doc. 17 at 3. According to Defendant, Plaintiff provides only "conclusory[,] self-serving information" to support his case which are outweighed by Defendant's evidence. Id.

### 1. *Step one of the Turner test*

Defendant concedes Plaintiff's claim cannot be dismissed under the first prong of the Turner test. Doc. 13-1 at 5 ("Accepting this allegation as true, it appears Defendant cannot rely solely on the first step in the Turner analysis, and [Plaintiff's] claim cannot be dismissed at Turner's step one for failure to exhaust administrative remedies."). However, Defendant also states that, "[a]lthough Plaintiff contends a counselor told him that he cannot grieve a disciplinary report, the administrative remedies were, in fact, available to Plaintiff for an excessive force claim, which is the claim brought in this case." Id. at 5; Doc. 17 at 1–2 ("As shown, the policy allows for the filing of grievances for alleged assaults, which is what the claim in this case is about, so a counselor informing Plaintiff he could not grieve a disciplinary report is irrelevant in the analysis."). In essence, Defendant is arguing that, even if Plaintiff's allegation is true, Plaintiff still had available administrative remedies, and therefore, was not prevented from filing a grievance for excessive use of force. This type of argument focuses on whether Plaintiff successfully *alleged* the unavailability of administrative remedies and is properly analyzed under step one of the Turner test. See, e.g., Pavao, 679 F. App'x at 824 (affirming a dismissal based on failure to exhaust when "[t]he facts alleged in [defendant's] motion to dismiss and [plaintiff's]

response are not in material conflict, and they demonstrate that [plaintiff] did not complete the administrative process in accordance with the applicable grievance procedures . . . .").

Although Defendant correctly observes that an inmate's inability to grieve a disciplinary report does not foreclose the inmate from filing an excessive use of force grievance, Plaintiff does not assert that he was merely denied the right to grieve the disciplinary report.  Rather, Plaintiff alleges the counselor "refused to give him a grievance on the 'misleading and confusing' notion that [Plaintiff] couldn't file a grievance concerning the Defendant's excessive use of force against him *because the issues involved would relate directly to the disciplinary report written*."  Doc. 19 at 1 (emphasis added).  Thus, Plaintiff is arguing he was unable to file a grievance at all because of the prison grievance counselor's misrepresentation.  While the alleged statement was not a correct interpretation of the SOP, Plaintiff's claim, taken as true, render the prison grievance process unavailable to him and excuse his failure to exhaust.  See, e.g., Ross, 136 S. Ct. at 1860 (finding exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); Turner, 541 F.3d at 1083 (holding administrative remedies unavailable when prison officials ripped up a grievance form); Miller, 196 F.3d at 1194 (finding inmates are not required to exhaust administrative remedies "after being told unequivocally" by prison officials that the administrative remedy is "precluded" or "prohibited").

### *2.    Step two of the <u>Turner</u> test: The Factual Disputes at Issue*

Plaintiff admits he did not utilize the grievance process because the actions of prison officials rendered such a process unavailable.  Doc. 1 at 3–4.  In response, Defendant argues the record before the Court demonstrates that the prison's grievance procedures remained available to Plaintiff and that Plaintiff was not denied an opportunity to file a grievance related to

9

excessive force.  Defendant attaches the following evidence to his Motion: (1) the Affidavit of

Tammy Stankowitz, chief grievance counselor at Rogers State Prison, doc. 13-2; (2) a copy of

GDC's SOP IIB05-001 (effective as of July 20, 2015), doc. 13-3; and (3) a copy of Plaintiff's

grievance history, doc. 13-4.

Plaintiff, for his part, continues to assert he "was never seeking to grieve the outcome of

the disciplinary proceeding" and that prison officials refused to provide him with a form to file a

grievance on the excessive use of force issue "because the issues involved would relate directly

to the disciplinary report written."  Doc. 19 at 1–2.  While Plaintiff has not yet provided any

affidavits or evidence outside the pleadings to support his assertion that the grievance process

was unavailable to him, Plaintiff filed a motion for discovery, doc. 16, alleging "discovery is

necessary in order to properly address the issue of Defendant's [M]otion to [D]ismiss."  Doc. 16

at 2.  Additionally, Plaintiff requests an evidentiary hearing.[2]

The parties' arguments implicate two questions: a legal question regarding what evidence

Plaintiff is required to submit in response to a motion to dismiss based on failure to exhaust and a

factual question as to whether Plaintiff's allegations are, on their face, true.  "[F]actual

determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for

---

[2]     Plaintiff asserts that he can show administrative procedures were unavailable under Ross and that he "will easily do so upon [a] hearing."  Doc. 19 at 1.  Additionally, Plaintiff, in responding to Defendant's argument for denial of injunctive relief, states, "[L]et's get this done and over with by having a hearing.  Id. at 3.  "Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category."  Retic v. United States, 215 F. App'x 962, 964 (11th Cir. 2007) (quoting Castro v. United States, 540 U.S. 375, 381 (2003)).  Federal courts "may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis."  Id. (quoting Castro, 540 U.S. at 381–82).  The Court construes Plaintiff's statements as a motion for an evidentiary hearing on both the failure to exhaust issue and on his preliminary injunction request.  The Court **DENIES** the motion.

the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).

The analysis begins with the burden. Defendant argues that, once he "establish[ed] . . . a prima facie exhaustion defense[,]" the burden shifts back to Plaintiff to rebut the defense with more than "conclusory self-serving information." Doc. 17 at 3. However, failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 2019 WL 76849, at *4 (11th Cir. Jan. 2, 2019) (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Womack, 2008 WL 4104148, at *6 (S.D. Ga. Sept. 4, 2008) (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Importantly, before a court resolves disputed factual issues in a motion to dismiss, the court must ensure that "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues,

11

the court must allow the parties to develop the record . . . .); <u>Porter v. Sightler</u>, 457 F. App'x 880,

882 (11th Cir. 2012); <u>Singleton</u>, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient

opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and

exhibits regarding the exhaustion issue").  While Plaintiff has not submitted any affidavits or

exhibits to the Court to help resolve the disputed factual issues, Plaintiff has requested an

evidentiary hearing on the issue of exhaustion.  Doc. 19 at 1.  When, as here, a party makes a

timely request for an evidentiary hearing, courts must be even more careful to ensure the record

is sufficiently developed before making any findings of fact.  See <u>Bryant</u>, 530 F.3d at 1377 n.16

(noting that, "at least in the absence of a timely request for an evidentiary hearing . . . a district

court may resolve material questions of fact on submitted papers for the PLRA's exhaustion of

remedies requirement"); <u>see also</u> <u>White v. Staten</u>, 672 F. App'x 919, 921 (11th Cir. 2016)

(remanding and instructing the lower court to "hold an evidentiary hearing on remand before

resolving any material questions of fact").

Even assuming that Plaintiff had sufficient opportunity to develop the record, the Court

finds Defendant's evidence does not directly contradict Plaintiff's claim.  Defendant offers the

affidavit of Tammy Stankowitz, the chief counselor at Rogers State Prison.  Doc. 13-2.

Stankowitz states, "It is true that, under the grievance SOP, an inmate cannot file a grievance

regarding disciplinary proceedings.  However, a use of force is grievable under this policy."  <u>Id.</u>

at 4.  This is consistent with Plaintiff's argument.  However, Plaintiff alleges prison officials

misrepresented to Plaintiff that he could not file an excessive force grievance because a

disciplinary report existed regarding the same incident, contrary to the SOP.

While Tammy Stankowitz, in her affidavit, discusses the general grievance policy at the

prison and Plaintiff's own previous grievance history, she does not directly dispute that Plaintiff

12

was denied the opportunity to utilize the grievance process.  Though Stankowitz is the chief

counselor charged with "ensuring compliance with the Grievance SOP[]" and she admits she is

aware of Plaintiff's claim that a prison grievance counselor refused to provide him a grievance

form, her affidavit contains no reference to any investigation to determine if any prison

counselor spoke with Plaintiff about the alleged incident, a counselor denied Plaintiff a grievance

form, or if any counselor misstated the grievance SOP.

Defendant submits a record detailing Plaintiff's grievance history, which shows Plaintiff

did not file a grievance related to the alleged July 23, 2017 incident but did file four grievances

at Rogers State Prison before the July 23, 2017 attack.  Doc. 13-4.  However, Plaintiff does not

claim he has always been denied grievance forms; rather, he asserts that he was denied a

grievance form regarding the July incident.  See Bryant, 530 F.3d at 1373 (noting that evidence

that plaintiff-inmate "successfully obtained and submitted a grievance form" in "another matter"

at the same prison "does not necessarily refute" plaintiff's allegations that he was denied a

grievance form to report a different matter).  Additionally, the evidence shows Plaintiff filed his

last grievance at Rogers State Prison over four months before the alleged denial and has not filed

a grievance since.  Doc. 13-4.  It does not show Plaintiff filed other grievances soon after the

incident and alleged denial of a grievance form.

In total, Defendant's evidence shows only that Rogers State Prison adopted the grievance

procedures outlined in SOP IIB05-0001 as its official policy, that the policy was in place on July

23, 2017, the date of the incident in question, and that Plaintiff previously filed grievances at

Rogers State Prison.  Defendants offer no evidence to contradict Plaintiff's claim that he was

prevented from filing an excessive force grievance based on misinformation about the grievance

process, namely the relationship between the disciplinary report and the excessive force grievance.

Defendant argues that Womack v. Sikes, 2008 WL 4104148, at *7, *13–24 (S.D. Ga. Sept. 4, 2008), is factually similar to this case and shows that Plaintiff should not be excused from the exhaustion requirement. Doc. 17 at 3–4. But, this case is distinguishable from Womack. In Womack, the plaintiff alleged that prison officers fabricated numerous disciplinary reports against him and that he was threatened and physically assaulted by prison officers at a disciplinary hearing. Id. at *1–4. Defendants in that case asserted that the plaintiff failed to exhaust his administrative remedies. Id. The plaintiff argued he was excused from the exhaustion requirement and asserted in "conclusory fashion" that, at times, the prison officers refused to give plaintiff a grievance form, and when a grievance form was submitted "it was done away with after [the plaintiff] filed it; and all subsequent forms filed were either rejected or denied if the grievances expressed anything about the excessive force by the officers." Id. at 4. Thus, the plaintiff in Womack alleged a far-fetched and improbable theory of systematic fabrication and obfuscation that, purportedly, caused his inability to exhaust his administrative remedies. The Court, in that case, found the plaintiff's credibility lacking and also found that the defendant's evidence "flatly contradict[ed]" the plaintiff's conclusory assertions. Id. at 5.

Unlike the plaintiff in Womack, Plaintiff in this case argues the denial of the grievance form was based on a prison official's simple misrepresentation of the grievance procedures. And, unlike in Womack, Stankowitz's affidavit does not flatly contradict Plaintiff's allegations or even address the specific the factual disputes at issue (i.e., whether a prison counselor misrepresented the grievance SOP to Plaintiff). Notably, in Womack, the evidence showed that the plaintiff had filed grievances "both before and after" the alleged denial of a grievance form,

14

including one formal grievance filed "only five days after the alleged incident." See 2008 WL

4104148, at *7.  But in this case, the evidence shows that, while Plaintiff filed some grievances

at Rogers State Prison, the grievances were filed months before the alleged incident, and none

were filed after the incident  Doc. 13-4.  Womack is factually different from this case in several

ways and does not support a finding in this case that Plaintiff should not be excused from the

exhaustion requirement.

 For all of the reasons set forth above, I **RECOMMEND** the Court **DENY in part**

Defendant's Motion to Dismiss related to Plaintiff's failure to exhaust administrative remedies.

## II. Injunctive Relief

 Defendant contends Plaintiff is not entitled to injunctive relief, and, therefore, Plaintiff's

request for Defendant to be fired should be dismissed.  I **RECOMMEND** the Court **GRANT**

this portion of Defendant's Motion to Dismiss and **DISMISS** Plaintiff's request for injunctive

relief.

 To be entitled to a preliminary injunction, the movant must show: (1) a substantial

likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to

prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or

protective order would inflict on the non-movant; and (4) the injunction or protective order

would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223,

1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy

not to be granted unless the movant clearly established the 'burden of persuasion' as to the four

requisites." Horton v. City of Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001).  Similarly, a

plaintiff requesting a permanent injunction must satisfy the following four-factor test:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a  permanent injunction.

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Thus, "[t]he standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success."  Siegel v. LePore, 234 F.3d 1163, 1213 (11th Cir. 2000) (Carnes, J., dissenting).  In either case, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites."  Horton, 272 at 1326.

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation."  Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982).  Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.").  In such cases, "[d]eference to prison authorities is especially appropriate."  Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and a less intrusive equitable remedy was available).

Plaintiff has not shown he has satisfied the prerequisites to be entitled to injunctive relief at this time.  Specifically, Plaintiff has not shown the requisite likelihood of success on the merits of his claims or that injunctive relief is necessary to prevent irreparable injury.  Plaintiff has

asked for the Court to issue an injunction directing the Georgia Department of Corrections to fire

Defendant.  However, the Department of Corrections is not a party to this suit.  <u>See, e.g.</u>, <u>Merritt</u>

<u>v. Godfrey</u>, No. 3:13CV607, 2015 WL 5439306, at *9 (N.D. Fla. Aug. 10, 2015) ("[T]he FDOC

is not a party to this suit.  Accordingly, the court cannot issue an injunction against the FDOC."),

*report and recommendation adopted*, No. 3:13CV607, 2015 WL 5440570 (N.D. Fla. Sept. 19,

2015).  Additionally, there is no indication that the purported constitutional violation is

continuing or will occur again in the future, such as to warrant injunctive relief.[3]

Even ignoring these fundamental defects, Plaintiff's request for an injunction ordering the

termination of Defendant from his employment would still be subject to dismissal, as the request

fails to satisfy the requirements for injunctions under the PLRA, namely that the injunction must

be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal

right." and be "the least intrusive means necessary to correct the violation of the Federal right."

18 U.S.C. § 3626.  For all of these reasons, the Court should **DISMISS** Plaintiff's request for

injunctive relief.

### III.    Compensatory and Nominal Damages

Defendant argues Plaintiff may not recover compensatory damages, only nominal

damages.  Doc. 13 at 7–8.  Specifically, Defendant contends Plaintiff did not allege a "physical

injury" in his Complaint, and, therefore, cannot recover more than nominal damages.  <u>Id.</u>

Plaintiff did not respond to Defendant's argument.  Docs. 15, 19.

"In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental

injury must be accompanied by allegations of physical injuries that are greater than de minimis."

---

[3]    Plaintiff's only contention slightly touching on this point is the statement in his response to the
Motion to Dismiss: "Defendant has a history of abuse and an established pattern of callous indifference
towards inmates as discovery will show."  Doc. 15 at 2.  This statement is conclusory, unsupported, and
speaks only to alleged past conduct, not any ongoing or future conduct.

Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (quoting Mitchell v. Brown &

Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002)); see also 42 U.S.C.

§ 1997e(e); Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 492 (11th Cir. 2009) (noting that

"minimal or temporary physical effects" do not constitute a physical injury that is more than *de

minimis*); Quinlan v. Pers. Transp. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (finding

complaints of temporary chest pain and difficulty breathing, headache, and periodic back pain

constitute only *de minimis* injury as "none of these things required immediate medical attention"

or resulted in more than discomfort); Chatham v. Adcock, 334 F. App'x 281, 285 (11th Cir.

2009) (holding that "anxiety, nightmares, and hallucinations" are merely *de minimis* physical

injury); Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (allegations of scrapes, bruising,

or welts are not enough to sustain an action for compensatory damages); Mathis v. Ga. State

Prison, No. 6:15-CV-122, 2016 WL 183753, at *4 (S.D. Ga. Jan. 14, 2016) (summarizing

applicable § 1997e(e) case law). "Despite this broad limitation," however, "successful

constitutional claimants who lack a physical injury may still recover nominal damages." Young

v. Smith., No. 6:17-CV-131, 2018 WL 3447179, at *14 (S.D. Ga. July 17, 2018) (citing Hughes

v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)); see also Hale, 345 F. App'x at 492 (finding error

when the district court concluded that a pro se plaintiff did not seek nominal damages when the

pro se plaintiff alleged a colorable constitutional claim).

Plaintiff's only mention of physical injuries occurs in his motion for discovery, doc. 16.

In that filing, Plaintiff states he needed medical records to show he suffered physical injuries,

and describes experiencing "dizziness, loss of equilibrium, and sharp pains in his right arm as a

result of [the] incident."[4] Id. at 2. While pro se pleadings are held to a less stringent standard

---

[4]    The Court stayed this action following Defendant's motion to dismiss and concurrently denied
Plaintiff's motion for discovery as moot.  Doc. 20 at n.1.  In that motion, Defendant argued he "need[ed]

and are construed liberally, pro se parties are not excused from compliance with procedural rules. Moton v. Cowart, 631 F.3d 1337, 1341 n.2 (11th Cir. 2011); Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007).  This Court, therefore, will not consider Plaintiff's sole allegation of physical injury, found only in his denied motion for discovery, as a supplement or amendment to his Complaint.

Even if the Court were to consider the allegation in Plaintiff's motion for discovery, the allegation shows only *de minimis* physical injury and discomfort.  Plaintiff's claims of dizziness, sharp pains, and loss of equilibrium do not show more than temporary discomfort and fail to establish a physical injury under § 1997e(e).  See, e.g., Magwood v. Fla. Dep't of Corr., No. 3:12CV14, 2012 WL 5279178, at *5 (N.D. Fla. Oct. 11, 2012) (finding that allegations of severe headaches, dizzy spells, and swollen feet do not show a more than *de minimis* physical injury). As Plaintiff fails to allege a physical injury, he is entitled only to nominal damages.  I, therefore, **RECOMMEND** the Court **GRANT in part** Defendant's Motion and **DISMISS without prejudice** Plaintiff's claim for compensatory and punitive damages.

## CONCLUSION

For the reasons above, I **RECOMMEND** the Court **DENY in part** Defendant's Motion to Dismiss, doc. 13, relating to Plaintiff's failure to exhaust and **GRANT in part** Defendant's Motion to Dismiss as to Plaintiff's claim for compensatory and punitive damages and preliminary injunctive relief.

---

medical records" to demonstrate why his "[C]omplaint should proceed."  Doc. 16 at 2.  However, Plaintiff does not need discovery in order to allege a physical injury which, taken as true, would be more than *de minimis* as a matter of law.  See Mitchell, 294 F.3d at 1312–13 ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by *allegations* of physical injuries that are greater than de minimis." (emphasis added)).  Obviously, Plaintiff has first-hand knowledge of the extent of his injuries and can describe those injuries in his Court filings.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED**, this 8th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA